UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES HENRY DOUGLAS                          CIVIL ACTION

VERSUS                                         NO. 07-5469

SHERIFF MARLIN GUSMAN, ET AL.                  SECTION "K" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Charles Henry Douglas, is a convicted burglar currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, former Orleans Parish Criminal Sheriff Charles C. Foti, Jr., the Medical Department of Orleans Parish Prison ("OPP"), A. Jenkins, Warden Lecour, W. Bailey, Mr. Deterville, Lt. Gaines, K. Waston, R. Drake, R. Brown, K. Oser, A. Carias and K. Johnson. Douglas alleges in his complaint that he is deaf and that, while incarcerated at OPP, he was not allowed the same access to a telecommunications device for the deaf (TDD), also known as a telephone typewriter (TTY), as hearing inmates are allowed to a telephone; he was not given closed captioning on the television; he was threatened by some defendants when he complained about the lack of a TTY; defendant Carias threw

him against a wall when he complained; and he was put into a holding cell for a few hours each time he complained.  He seeks compensatory and punitive damages and attorney's fees.  Record Doc. No. 1 (Complaint at ¶¶ IV, V).

On December 18, 2007, I conducted a telephone conference in this matter. Participating were plaintiff pro se, via TTY,[1] and Monique Morial, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Douglas testified that he is currently incarcerated in the Louisiana State Penitentiary at Angola based on a parole violation and on his conviction for burglary in October 2007, for which he is serving a two-year sentence.  He testified that his complaint arises from two periods of time when he was incarcerated in OPP.  He confirmed that his claims are that:  (1) because he is deaf, he was not given the same rights as the other prisoners to use the telephone or watch television; and (2) he was not given the aid of an interpreter for the deaf for medical and/or doctors' appointments.

---

[1]During the hearing, the court used an ordinary telephone and spoke to a relay operator, who typed the court's words and relayed the text to plaintiff.  Douglas typed his responses, which the relay operator then read to the court. The proceedings were recorded. Record Doc. No. 18.

Douglas stated that in 2000 he was released on parole from prison, where he had been serving a sentence for a gun-related conviction in 1995, and that he had six years remaining of the sentence to finish while on parole.  He testified that he was arrested on May 3, 2006 and that he stayed in OPP until he was moved some time in August 2006 to the Department of Corrections.  He stated that he was transferred back to OPP in May 2007, where he remained until he was moved to Angola during the first week of November 2007.  He testified that he was sentenced on his burglary conviction on October 30, 2007 and that his parole violation was to run with that sentence.

Plaintiff said that his first set of claims arise from when he first arrived at the OPP lockup after being arrested.  He testified that, when he arrived at lockup, he asked to use the TTY.  However, he said he was told that there was no TTY and there were no interpreters to help him understand the prison procedures.  He testified that there was no help for him to use the telephone, so he wrote a note to the guard asking for help.  He stated that the guard refused to help him make a telephone call.

Douglas said that he was sent to the Templeman unit at OPP after leaving lockup and that he spoke to the Templeman warden and some of the ranking officers about the TTY device when he got there.  He testified that they told him that, because he had just

arrived, he would have to wait for a week or so to use a TTY.  He said he was later told that there was no TTY device at the prison, so he filed a grievance.  He testified that, after he had not received any response for 30 to 45 days, he contacted the advocacy center for help and the advocacy center wrote a letter to the Sheriff.  He said he received threats from the staff and ranking officers at the prison when he kept complaining.

Plaintiff stated that a TTY is a device for the deaf to use to communicate by telephone with hearing people.  He stated that he was not given use of a TTY until after he filed a complaint and that he was only allowed to use the device for one 10-minute call per week.  He testified that the other inmates were allowed to use the telephones from early morning until around 11:00 pm, seven days a week, and that they had unlimited call time.  He stated that he was restrained and placed in a cold holding cell when he complained about wanting to use the TTY to call his lawyer.

Plaintiff testified that he was given use of a TTY five to ten times at the end of the period from May 2006 to August 2006.  He said that he received access to the TTY about 15 to 20 times from the day when he returned to OPP in May 2007 until about September 2007.  He testified that, after he filed the instant complaint in federal court in August 2007, the warden moved him to a new building at the prison and gave him access to the

4

TTY for one call in the daytime and one call in the evening, seven days a week, for about six weeks before he was transferred to Angola during the first week of November 2007.

Plaintiff testified that a State public defender named Anna Van Cleeve was initially appointed to represent him in his criminal proceedings and that an attorney named John Fuller helped him at the end before he was sentenced.  He also said that the court ordered an interpreter for him in his criminal proceedings.

Douglas testified that he suffered from emotional distress, frustration and depression as a result of his limited access to a TTY device.  He stated that he was unable to eat at times.   He said that he requested medical attention for his depression, but that he was only given medication to ease his stress and help his appetite.  He stated that he was also required to take a class that was held at the jail.

Plaintiff testified that he was threatened by members of the Special Investigation Division after he was moved to the new building in September 2007.  He stated that an officer made him get on his knees in a holding cell and put his hands behind his head, and then placed a piece of paper in front of him for him to read, which stated that he should stop writing complaints to the Sheriff or they would spray pepper on him and keep him in lockdown until he is released from jail.

Douglas testified that when he asked an officer why they never put the closed captions on the jail television, the officer told him to stay out of jail and then he could have closed captions at home. He stated that the closed captions were never put on the television while he was in jail.

Plaintiff's medical records from the OPP dated from May 29, 2007 through September 5, 2007 reflect that he is deaf, but he reported no other medical problems during medical screening at intake on May 29, 2007. The medical records do not reflect that Douglas either requested or received any medical treatment or medications during that time period. Record Doc. No. 10.

## ANALYSIS

### I.      STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504

U.S. 25 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents." <u>Id.</u> (citation omitted).

After a <u>Spears</u> hearing, the complaint must be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's Section 1983 complaint must be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6), in light of his testimony explaining the factual basis of his claims, in part because some of the claims asserted are barred by the applicable statute of limitations (or prescription). Plaintiff's Section 1983 complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[2]

## II.   PRESCRIPTION

Plaintiff's Section 1983 claims arising from his first period of incarceration in OPP are barred, at least in part, by the applicable statute of limitations, which is known as "prescription" under analogous Louisiana law. "In an action under [28 U.S.C. §] 1915, a district court may raise the defense of limitations sua sponte. Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations." Harris v. Hegmann, 198 F.3d 153, 156 (5th Cir. 1999) (citations omitted); accord Stanley v. Foster, 464 F.3d 565, 567 (5th Cir. 2006).

---

[2] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Although Section 1983 contains no express statute of limitations, the one-year Louisiana prescriptive period is applicable to Section 1983 suits in this federal court. Mitchell v. Crescent River Port Pilots Ass'n, No. 07-30525, 2008 WL 410414, at *3 (5th Cir. Feb. 14, 2008) (citing Clifford v. Gibbs, 298 F.3d 328, 332 (5th Cir. 2002)). Louisiana law provides for a one-year prescriptive period from the date of injury or damage. Id. (citing Clifford, 298 F.3d at 332).

Plaintiff's first set of claims in the instant case is based on events that occurred between May 3, 2006, when he was arrested, and some time in August 2006, when he was transferred out of OPP. Thus, the facts on which he bases his claims during this time period would have ended by August 31, 2006 at the latest. He had a prescriptive period of one year from the date of each incident that occurred on or before August 31, 2006 within which to file suit concerning any such incident.

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the plaintiff for delivery to the court is considered the time of filing for limitations

purposes.  Stevenson v. Anderson, 139 Fed. Appx. 603, 2005 WL 1367766, at *1 (5th

Cir. 2005); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); Harrell v. Edwards,

No. 05-4002, 2007 WL 734387, at *4-5 (E.D. La. Mar. 6, 2007) (McNamara, J.).

In this case, the earliest date on which prison officials could have received

plaintiff's complaint for delivery to this court is August 17, 2007, the date on which he

signed it.[3]   Record Doc. No. 1, Complaint at ¶ VII.   Under the mailbox rule, his

complaint is therefore considered to have been filed and this action commenced on

August 17, 2007 for limitations purposes.

Federal law determines when a Section 1983 claim accrues.  Dixon v. Hubert, No.

07-30343, 2007 WL 4561123, at *1 (5th Cir. Dec. 28, 2007) (citing Jacobsen v. Osborne,

133 F.3d 315, 319 (5th Cir. 1998)).  The Section 1983 prescriptive period commences

when the aggrieved party either knows of the violation or has notice of facts which, in

the exercise of due diligence, would have led to actual knowledge.   Brown v.

Nationsbank Corp., 188 F.3d 579, 589-90 (5th Cir. 1999); Piotrowski v. City of Houston,

51 F.3d 512, 516 (5th Cir. 1995).  Determination of when a plaintiff knew or should have

known of a possible cause of action has two factors:  "(1) [t]he existence of the injury;

---

[3]The complaint was actually tendered to the Clerk of Court for filing in this court on August 23, 2007.

and (2) causation, that is, the connection between the injury and the defendant's actions. A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim."  Id.; accord Dixon, 2007 WL 4561123, at *1.

Douglas testified that several of the incidents about which he complains occurred between May 3, 2006 and a date in August 2006 when he was transferred out of OPP. He knew of the existence of his injuries and the connection between those injuries and the defendants' actions each time that he was denied access to the TTY or closed captioning, or was threatened or assaulted during that time period.  Thus, all of his claims based on incidents that occurred before August 17, 2006, which was one year before his complaint was deemed filed on August 17, 2007, have prescribed and must be dismissed.

III.   EQUAL PROTECTION

Douglas alleges that he was denied equal protection in three respects:  (1) he had only limited access to a TTY, while hearing inmates had almost unlimited access to a telephone, (2) the television where he was housed did not have closed captioning and (3) he was not given the aid of an interpreter for the deaf for medical appointments.

"To state an equal protection claim, [Douglas] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or

intentional discrimination." <u>McKnight v. Eason</u>, 227 Fed. Appx. 356, 2007 WL 1334184, at *1 (5th Cir. 2007) (citation omitted); <u>accord</u> <u>Baranowski v. Hart</u>, 486 F.3d 112, 123 (5th Cir.), <u>cert. denied</u>, 128 S. Ct. 707 (2007).

Plaintiff's equal protection claims regarding the TTY and closed-captioned television fail to state a claim cognizable under Section 1983 for several reasons. First, his testimony establishes that no fundamental right was burdened by defendants' failure to provide either unlimited TTY access or closed captioning on the tier television. Douglas clearly has no constitutionally protected right to unlimited TTY access or a closed-captioned television while in jail. The reasons why there was no TTY device on plaintiff's tier can be the result of a number of legitimate, nondiscriminatory variables, other than intentional discrimination, including the cost of purchasing and operating the device, the number of inmates who need it on a particular tier and/or throughout the prison population, and the need to have a deputy delegated to assist prisoners in using it. Furthermore, plaintiff's testimony failed to show any evidence that OPP employees acted with purposeful discriminatory motivation.

Prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate administration without a constitutional

13

violation.  Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).

Prisoners have "'no right to unlimited telephone use.'  Instead, a prisoner's right to telephone access is 'subject to rational limitations in the face of legitimate security interests of the penal institution.'"  Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (quoting Benzel v. Grammar, 869 F.2d 1105, 1108 (8th Cir. 1982); Strandberg v. City of Helena, 791 F.2d 744, 747 (9th Cir. 1986)).  "Prisons legitimately impose a variety of restrictions on inmates' use of telephones."  Roy v. Stanley, No. 02-CV-555-JURISDICTION, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005) (citing United States v. Lewis, 406 F.3d 11, 13 (1st Cir. 2005); Gilday v. Dubois, 124 F.3d 277, 293 (1st Cir. 1997); Spurlock v. Simmons, 88 F. Supp. 2d 1189, 1193 (D. Kan. 2000)).

Furthermore, "'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'"  Johnson v. Rodriguez, 110 F.3d 299, 306 (5th Cir. 1997) (quoting Dandridge v. Williams, 397 U.S. 471, 485 (1970)).  "Rather, as long as they do not burden a fundamental right or target a suspect class, 'state agencies may pursue legitimate purposes by any means having a conceivable rational relationship to those purposes.'"  Id. (quotation omitted).

14

Disabled persons are not a suspect class.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985) (heightened equal protection scrutiny applies only to classifications based on race, alienage, national origin, gender and legitimacy).  "To withstand equal protection review, classifications which distinguish between deaf persons and others need only be rationally related to a legitimate governmental interest." Rewolinski v. Morgan, 896 F. Supp. 879, 881 (E.D. Wis. 1995) (citing City of Cleburne, 473 U.S. at 446); accord Johnson, 110 F.3d at 306.

> [D]isparate impact alone cannot suffice to state an Equal Protection violation; otherwise, any law could be challenged on Equal Protection grounds by whomever it has negatively impacted.  Thus, a party who wishes to make out an Equal Protection claim must prove "the existence of purposeful discrimination" motivating the state action which caused the complained-of injury.  "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."

Id. at 306-07 (quoting Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988)) (citing Washington v. Davis, 426 U.S. 229, 246-250 (1976)) (quoting McCleskey v. Kemp, 481 U.S. 279, 292-93 (1987); Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995)) (emphasis added).

According to plaintiff's testimony, there was a telephone on the tier where he was housed during the relevant time period, to which all inmates apparently had access whenever they were not locked in their cells, but a TTY was not similarly available on the tier.  Douglas attached grievance forms to his complaint that provide additional evidence.  In one grievance, plaintiff stated that "T.D.D. can be hooked up on tier as like [sic] other jails have."  Record Doc. No. 1, Inmate's Grievance Form dated June 25, 2007.  On a response form, a deputy stated that "Mr. Douglas is not being denied use of the phone, it's just he can't go every time a deputy pass[es] the dorm door."  Record Doc. No. 1, Step One Response Form dated August 14, 2007.  Plaintiff's testimony and these documents establish that a TTY was available somewhere in the prison but that, because it was not located in the dorm where Douglas was housed, a deputy would have to take him outside the dorm to use it.

"The essence of an equal protection claim is that the plaintiff was treated differently than similarly situated persons."  Crull v. City of New Braunfels, No. 07-50716, 2008 WL 485136, at *3 (5th Cir. Feb. 25, 2008) (citing Stoneburner v. Secretary of the Army, 152 F.3d 485, 491 (5th Cir. 1998)).  However, like the deaf

16

plaintiff in Spurlock, Douglas fails to show that he was similarly situated to inmates who

received unlimited telephone access.

> While plaintiff alleges that he is similarly situated, it is uncontroverted that
> he cannot use the regular inmate telephone system.  Instead, plaintiff must
> use a facility telephone [equipped with a TDD].[4]  As discussed above,
> inmates only have unlimited access to the inmate telephone system; they
> do not have unlimited access to facility telephones.  Plaintiff is therefore
> not similarly situated to inmates who are able to use the inmate telephone
> system.  Further, plaintiff fails to show that defendants treated him any
> differently than other inmates who required use of facility telephones.

Spurlock, 88 F. Supp. 2d at 1194 (citing Tonkovich v. Kansas Bd. of Regents, 159 F.3d

504, 532-33 (10th Cir. 1998)).  This failure defeats plaintiff's equal protection claim

based on use of the TTY.

Moreover, prison officials did not place unreasonable limitations on plaintiff's use

of the TTY, which required delegating a deputy to escort Douglas to use the device.

Martin v. Sargent, 780 F.2d 1334, 1338 (8th Cir. 1985); Spurlock, 88 F. Supp. 2d at

1193-94.  Allowing Douglas to use the TTY 15 to 20 times between May 2007 and

August or September 2007, and then letting him make one call in the daytime and one

---

[4]Using a "facility telephone" meant that "because a TDD would not work with the regular inmate
telephone system, [prison] officials allowed plaintiff to use telephones in the Unit Team Offices . . . .
When plaintiff needed to use the telephone, a Unit Team official had to unlock the Unit Team office."
Spurlock, 88 F. Supp. 2d at 1192.

call in the evening, seven days a week for about six weeks, were rational limitations in the face of legitimate security interests.  Id. at 1194.

Finally, Douglas alleges that his equal protection rights were violated because he was not given the aid of an interpreter for the deaf for medical appointments.  However, he did not testify that he had any medical appointments during which he needed such aid or that he ever requested an interpreter to assist him with medical appointments.  The certified medical records from the OPP establish that he neither sought nor received any medical treatment during the relevant time period, other than the intake medical screening when he arrived.  He does not complain that he was unable to communicate during the intake screening or at any other specific time when he needed medical attention.  "Even assuming that plaintiff's communications with [prison] employees were not exactly equal to those of other inmates, the record shows that any communications problems were de minimis [or, in this case, nonexistent] and do not rise to the level of a constitutional violation."  Spurlock, 88 F. Supp. 2d at 1193-94 (citing Papasan v. Allain, 478 U.S. 265, 300 (1986) (J. Powell, concurring in part and dissenting in part); Doe v. Bagan, 41 F.3d 571, 575 (10th Cir. 1994)).

In summary, Douglas "does not offer this court anything other than conclusory allegations of [disability] discrimination in the prison where he is incarcerated. [He] has therefore failed to assert a cognizable equal protection claim." <u>McKnight</u>, 2007 WL 1334184, at *1 (citations omitted). Douglas did not establish that the acts by OPP employees burdened any fundamental right, targeted a suspect class or evidenced any discriminatory purpose. Thus, his equal protection claim is based on a meritless legal theory and should be dismissed as frivolous.

IV.   <u>PLAINTIFF'S ADA CLAIM</u>

     A.   <u>No Individual Liability Under the ADA</u>

The Supreme Court in <u>Pennsylvania Dep't of Corrections v. Yeskey</u>, 524 U.S. 206, 209-10 (1998), recognized for the first time that state prisoners may bring claims against their jailors for disability discrimination under Title II of the ADA, which prohibits discrimination by public entities. Thus, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

19

Because the term "public entity" in Title II does not include individuals, individual defendants cannot be held personally liable for violations of Title II of the ADA.  Walker v. Snyder, 213 F.3d 344, 347 (7th Cir. 2000), abrogated on other grounds by Board of Trustees v. Garrett, 531 U.S. 356, 374 n.9 (2001), as stated in Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912 (7th Cir. 2003); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); Mitchell v. Massachusetts Dep't of Correction, 190 F. Supp. 2d 204, 211(D. Mass. 2002); Washington v. Davis, No. 01-1863, 2001 WL 1287125, at *3 (E.D. La. Oct. 23, 2001); Sims v. Tester, No. 3:00CV0863D, 2001 WL 627600, at *1 (N.D. Tex. Feb. 13, 2001); Berthelot v. Stadler, No. 99-2009, 2000 WL 1568224, at *1 (E.D. La. Oct. 19, 2000).

Thus, to whatever extent, if any, that the individual defendants are being sued in their individual capacities, plaintiff's ADA claims against them must be dismissed.

B.    Plaintiff's Official Capacity ADA Claim

When a pro se plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is generally presumed by operation of law that the defendant is named in his or her official capacity.  Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995); Soper v. Hoben, 195 F.3d 845, 853 (6th

20

Cir. 1999); <u>Wells v. Brown</u>, 891 F.2d 591, 593 (6th Cir. 1989); <u>but see</u> <u>Biggs v. Meadows</u>, 66 F.3d 56 (4th Cir. 1995) (examining complaint to determine capacity in which defendant is sued); <u>Larez v. City of Los Angeles</u>, 946 F.2d 630 (9th Cir. 1991) (presuming that defendant is sued in both capacities if complaint is silent).

The real party in interest in an official capacity suit is the government entity. <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 289 (2d Cir. 2003) (citing <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)).  As to any <u>official</u> capacity claim that plaintiff may be asserting against the individual defendants under the ADA, plaintiff's testimony, which must be accepted as true for present purposes, establishes two threshold requirements for assertion of an ADA claim.

First, Douglas appears to be "disabled" within the meaning of the Act.  The statute defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [a qualified] individual; (B) a record of such an impairment; or (C) being regarded as having such impairment."  <u>Id.</u> § 12102(2).  Major life activities "include functions such as . . . hearing."  <u>Bragdon v. Abbott</u>, 524 U.S. 624, 638-39 (1998) (quotation omitted).  Douglas's testimony adequately alleges substantial physical impairments in the major life activity of hearing.

Second, a plaintiff proceeding under Title II must "show that:  (1) he or she is a 'qualified individual with a disability'; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity <u>by reason of his or her disability</u>; and (3) the entity which provides the service, program or activity is a public entity."  <u>Burgess v. Goord</u>, No. 98 Civ. 2077(SAS), 1999 WL 33458, at *7 (S.D.N.Y. Jan. 26, 1999) (emphasis in original) (quotation and citation omitted); <u>accord</u> <u>Moore v. Prison Health Servs., Inc.</u>, 24 F. Supp. 2d 1164, 1167 (D. Kan. 1998) (citing <u>Layton v. Elder</u>, 143 F.3d 469, 472 (8th Cir. 1998)), <u>aff'd</u>, No. 98-3310, 1999 WL 1079848 (10th Cir. Dec. 1, 1999); <u>King v. Edgar</u>, No. 96 C 4137, 1996 WL 705256, at *5 (N.D. Ill. Dec. 4, 1996).  In this regard, plaintiff's testimony, accepted as true for present purposes, alleges that OPP provides unlimited telephone and television access for some inmates, but not for him, and that the prison's exclusion of him from these activities and programs is by reason of his disability.

Thus, on these first two levels, Douglas appears to state an ADA claim.  His claim must be dismissed, however, because he cannot as a matter of law assert an ADA claim under these circumstances and against the defendants named in this case in their official capacities.

First, Title II does not require a prison to make reasonable accommodations for inmates with disabilities, <u>Owens v. O'Dea</u>, 149 F.3d 1184, 1998 WL 344063, at *3 (6th Cir. 1998), create a right for a disabled inmate to demand that the prison implement a specific type of service, program, or activity that is not already available or create a right for such an inmate to be housed at a specific prison, where alternate services, programs or activities might be available.  <u>Garrett v. Angelone</u>, 940 F. Supp. 933, 942 (W.D. Va. 1996), <u>aff'd</u>, 107 F.3d 865 (4th Cir. 1997).

Second, "[a] plaintiff asserting a private cause of action for violations of the ADA . . . may only recover compensatory damages upon a showing of intentional discrimination."  <u>Delano-Pyle v. Victoria County</u>, 302 F.3d 567, 575 (5th Cir. 2002) (citing <u>Carter v. Orleans Parish Pub. Sch.</u>, 725 F.2d 261, 264 (5th Cir. 1984)).  "Acts of negligence do not come within the ambit of the ADA."  <u>Norman v. TDCJ-ID</u>, No. 6:06cv403, 2007 WL 3037129, at *5 (E.D. Tex. Oct. 18, 2007) (citing <u>Foley v. City of Lafayette</u>, 359 F.3d 925, 931 (7th Cir. 2004)).

Thus, plaintiff must allege that he "is being excluded from participation in, being denied the benefits of, or being subjected to discrimination . . . solely because of h[is] disability."  <u>Dillery v. City of Sandusky</u>, 398 F.3d 562, 567 (6th Cir. 2005) (quotation

omitted).  The lack of a TTY device in the tier where Douglas was housed "affects all

[hearing] disabled persons, not just [Douglas].  Thus, [Douglas] cannot demonstrate that

[defendants] intentionally discriminated against [him] specifically by failing to [provide

a TTY].  '[A]cts and omissions which have a disparate impact on disabled persons in

general [are] not specific acts of intentional discrimination against [the plaintiff] in

particular.'"  Id. at 568 (quoting Tyler v. City of Manhattan, 118 F.3d 1400, 1403 (10th

Cir. 1997)); accord Thao v. City of St. Paul, No. 05-5306, 2006 WL 1004379, at *8 (D.

Minn. Apr. 13, 2006), aff'd, 481 F.3d 565 (8th Cir. 2007).

Again, as with the deaf inmate in Spurlock:

> Regarding plaintiff's claim that defendants discriminated against him
> by not providing him unlimited access to a telephone [with TDD], . . . the
> record establishes as a matter of law that plaintiff had meaningful access to
> a telephone.  Defendants allowed plaintiff at least two 30-minute calls per
> week. . . .
> 
> Second, even if defendants' restrictions did not allow plaintiff to
> have meaningful access to the telephone, plaintiff fails to produce evidence
> that would allow a reasonable jury to find that defendants could reasonably
> accommodate his request for unlimited phone use.  Plaintiff fails to suggest
> any accommodation.  His complaint and grievances suggest that he believes
> that [prison] staff should be available and able to immediately assist him
> whenever he finds it convenient to use the telephone, regardless of other
> job requirements.  Such a request would be unreasonable and implausible.
> The only record evidence suggests that such a broad accommodation would
> place an undue burden on [prison] officials.

24

Spurlock, 88 F. Supp. 2d at 1196 (citing Memmer v. Marin County Courts, 169 F.3d 630,

633 (9th Cir. 1999); Smith v. Midland Brake, Inc., 180 F.3d 1154, 1162 (10th Cir. 1999)

(employee bears burden of proving a reasonable accommodation); McGuinness v.

University of New Mexico, 170 F.3d 974, 979 (10th Cir. 1998) (plaintiff cannot request

unreasonable accommodation); Woodman v. Runyon, 132 F.3d 1330, 1344 (10th Cir.

1997)).  In the instant case, Douglas's testimony that he was allowed to use the TTY 15

to 20 times between May 2007 and August or September 2007, and then to make one call

in the daytime and one call in the evening, seven days a week for about six weeks,

provided him with meaningful access to the telephone as a matter of law.  Furthermore,

plaintiff has not suggested any additional accommodation that would not place an undue

burden on OPP officials.

Because the binding case law discussed above prohibits the assertion by Douglas

of an ADA claim against these defendants, he has failed to state a claim under the ADA,

and this claim must be dismissed.

V.   MERE THREATS

Plaintiff's allegations that he was threatened by some defendants when he

complained about the lack of a TTY are not cognizable under Section 1983.  Robertson

v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995).  The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'"  Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ."  Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994).  In this case, plaintiff's allegations of verbal abuse and threats do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

VI.     NO PHYSICAL INJURY

Plaintiff's claim is also deficient under Section 1983 because he fails to allege "physical injury" sufficient to support his claim for monetary damages.  Specifically, the Prison Litigation Reform Act of 1996 includes the following requirement in 42 U.S.C. § 1997e(e):  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury while in custody without a prior showing of physical injury." (Emphasis added).  Douglas does not allege any specific "injuries" in this case during the relevant time period, but complains of lack of access to a TTY, closed captioning and an interpreter; verbal threats; and being placed in a holding cell for a short time.

In recent decisions, the Fifth Circuit has consistently enforced the statutory physical injury requirement for prisoners who seek compensatory damages for intangible emotional or psychological harm, such as has been alleged by Douglas in this case. Hutchins v. McDaniels, 512 F.3d 193, 196 (5th Cir. 2007); Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005); Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001).

The Fifth Circuit has explained that "[t]he 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'"  Alexander v. Tippah

27

County, 351 F.3d 626, 631 (5th Cir. 2003) (citing Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar, 112 F.3d at 193).  Thus, in Alexander, the court found that "[Section] 1997e(e) precludes [plaintiffs] from recovering for their emotional and mental injuries" when the only physical injuries they had suffered were nausea and one incident of vomiting.  Id.  Similarly, in Siglar, the court held that a prisoner's ear that was sore and bruised for three days was merely a de minimis injury.  Siglar, 112 F.3d at 193.

In this case, Douglas has not alleged any physical injuries of any kind as a result of the alleged deprivations.  As Section 1997e(e) provides and Fifth Circuit case law makes clear, he is precluded as a matter of law from recovering damages for the psychological or other emotional injury he has asserted.

Furthermore, although Section 1997e(e) allows recovery of punitive and/or nominal damages in an appropriate case, Hutchins, 512 F.3d at 197-98, Douglas has not shown any constitutional violation that would entitle him to even nominal damages, "[n]or has [plaintiff] shown the 'evil intent' or 'callous indifference' required to obtain punitive damages."  Allen v. Stalder, 201 Fed. Appx. 276, 2006 WL 2852925, at *1 (5th Cir. 2006) (citing Williams v. Kaufman County, 352 F.3d 994, 1015 (5th Cir. 2003)).  Thus, plaintiff's complaint must be dismissed in this regard.

VII.   IMPROPER DEFENDANTS

A.   Sheriff Gusman and Former Sheriff Foti

Douglas has named Sheriff Gusman and former Sheriff Foti as defendants concerning the claims asserted in this case.  Douglas makes no claim that either sheriff was personally involved in any of the alleged acts or omissions upon which plaintiff's claims are based.  "There is no respondeat superior liability under section 1983." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, neither Sheriff Gusman nor former Sheriff Foti can be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in the sheriff's employ.  Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).  To hold the sheriff liable, plaintiff must establish either that he "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the sheriff] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981).  In the instant action, plaintiff has failed to establish either of these two criteria.

B.    <u>OPP Medical Department</u>

As to plaintiff's claim against the OPP medical department, a prison or jail or its administrative departments are not entities that can be sued under Section 1983 because they are not juridical entities under state law capable of being sued and/or because they are not persons for purposes of suit under Section 1983 as the statute and case law define that term.  <u>United States ex rel. Arzonica v. Scheipe</u>, 474 F.2d 720, 721 (3d Cir. 1973); <u>Cullen v. DuPage County</u>, No. 99C1296, 1999 WL 1212570, *1 (N.D. Ill. Dec. 14, 1999); <u>Whitley v. Westchester County Corr. Facility Admin.</u>, No. 97CIV0420(SS), 1997 WL 659100, at *6 (S.D.N.Y. Oct. 22, 1997); <u>Sponsler v. Berks County Prison</u>, No. 95-1136, 1995 WL 92370, at *1 (E.D. Pa. 1995); <u>Powell v. Cook County Jail</u>, 814 F. Supp. 757, 758 (N.D. Ill. 1993).  Thus, Douglas can assert no claim against the OPP medical department under Section 1983.

## **<u>RECOMMENDATION</u>**

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's Section 1983 complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __29th__ day of April, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE